UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAMELA KAMPELMAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 4:09CV1039 HEA |
| | ) |
| CODMAN & SHURTEEF, INC. et al., | ) |
| | ) |
| Defendants. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant St. Luke's Episcopal-Presbyterian Hospitals d/b/a St. Luke's Hospital's Motions to Dismiss, [Doc. No.'s 8, 9 and 10]. Plaintiffs have not responded to the Motions. For the reasons set forth below, the Motions are granted.

### **Facts and Background**[1]

Plaintiffs filed this action on May 11, 2008 in the Circuit Court of St. Louis County, Missouri. The Petition named as Defendants, Codman Shurteef, Inc., Johnson & Johnson Professional, Inc., Johnson & Johnson, (collectively, the "Johnson & Johnson Defendants"), and St. Luke's Episcopal-Presbyterian Hospitals, d/b/a St. Luke's Hospital, (St. Luke's). The Petition alleges the following facts: In Count I, the Petition alleges that Plaintiff Pamela Kampelman had an operation on April 26, 2004 at St. Luke's Hospital. She was charged for a "quarter-

---

[1] The recitation of facts is taken from the pleadings in the record to date, and is set forth for the purpose of these motions only. It in no way relieves any party herein of the necessary proof of the facts in later proceedings.

by-quarter cottonoid" which was allegedly designed, manufactured, distributed and sold by the Johnson & Johnson Defendants. Plaintiffs further allege that St. Luke's placed the cottonoid into the stream of commerce and charged Plaintiff Pamela for the cottonwood, and therefore sold it.

According to the Petition, during the procedure, the cottonoid became disengaged from its thread "tail" which prevented its discovery and which was left in the body of Plaintiff Pamela. Plaintiffs claim that Pamela was required to undergo additional surgeries and procedures and suffered severe, permanent and progressive injuries, to wit, nerve damage to the facial nerves and emotional trauma and additional pain and suffering.

Plaintiffs claim the cottonoid was defective and unreasonably dangerous when put to a reasonably anticipated use in that the thread "tail" was manufactured of inadequate strength to withstand foreseeable pulling conditions within the lifetime of the cottonoid. The thread "tail" was allegedly further defectively designed in that it was not of sufficient strength to withstand the normal rigors of use for its intended purpose and was not sufficiently attached to the cottonoid to withstand foreseeable force applied to the thread within the lifetime of the cottonoid.

Count II of the Petition alleges that Defendants were negligent in furnishing the cottonwood, in failing to properly test the cottonoid; and for utilizing inadequate quality control to determine that the thread "tail" was not properly attached to the cottonoid.

Count III of the Petition seeks recovery for the loss of consortium allegedly suffered by David Kampelman, Pamela's husband.

The Johnson & Johnson Defendants removed this matter on July 2, 2009 based upon the Court's diversity of citizenship jurisdiction. 28 U.S.C. § 1332. Although St. Luke's is a citizen of the state of Missouri, as are Plaintiffs, the Johnson & Johnson Defendants urged that St. Luke's did not need to consent to nor join in the Notice of Removal (and implicitly, the Court need not consider its citizenship) because it was fraudulently joined.

St. Luke's now moves to dismiss on several grounds, initially, that it, as a health care provider did not make a "sale" of the product. Moreover, St. Luke's urges dismissal pursuant to § 537.762 RSMo.

## Discussion

### Motion to Dismiss Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint. The Supreme Court has determined that *Conley v. Gibson's*, 355 U.S. 41, 45-46 (1957), "no set of facts" language "has earned its retirement." *Bell Atlantic Corp. v. Twombly,* __ U.S.__, __, 127 S.Ct. 1955, 1969 (2007). Noting the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" the Court held that a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1964-65, 1974. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Id.* at 1965. The Court explained that this new standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* On the other hand, the Court noted that "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "[P]rior rulings and considered views of leading commentators" can assist in assessing the plausibility of the plaintiffs' allegations. *Id.* at 1966. This standard of review has recently been utilized by the Eighth Circuit Court of Appeals. The Court accepts "as true all factual allegations in the complaint, giving no effect to conclusory allegations of law. The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). (Citations omitted).

When considering a motion to dismiss, courts are still required to accept the complaint's factual allegations as true. *Twombly*, 127 S.Ct. at 1965. All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). "In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997).

Moreover, "[w]hen ruling on a motion to dismiss under Rule[ ] 12(b)(6)..., a district court generally may not consider materials outside the pleadings." *Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir.2008). "It may, however, consider ... materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" *Id.* (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999)). See also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) (when considering Rule 12(b)(6) motion to dismiss, court may examine documents incorporated into complaint by reference).

Count I seeks damages under a strict product liability theory.

> "The essential elements of a strict product liability claim are (1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold."

*Haffey v. Generac Portable Products, L.L.C.,* 171 S.W.3d 805, 809 (Mo.App. 2005), quoting *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 325 (Mo.App.2000).

As Defendant St. Luke's argues, health care providers provide services and do not make a "sale" of a product. Indeed, the Supreme Court of Missouri has unequivocally announced that hospitals are not subject to strict product liability actions.

> [S]trict liability is not applicable to health care providers [as evidenced by] sec. 538.300 [RSMo]. That section provides that the provisions of sec. 537.760 to sec. 537.765, relating to products liability actions, are not applicable to actions against health care providers. Section 537.760 codifies sec. 402A of the Restatement (Second) of Torts. *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 65 (Mo. banc 1999).[5] The exception of health care providers from the provisions codifying strict products liability is yet another clear indication that the general assembly intended to abrogate such liability for health care providers. Just as enactment of sec. 537.760 codified strict products liability, the exception provided for in sec. 538.300 was intended to eliminate such statutory liability for health care providers.
>
> > Footnote 5: [Plaintiff] cites *Connelly v. Iolab Corp.*, 927 S.W.2d 848 (Mo. banc 1996), to argue that secs. 537.760 to 537.765 did not codify common law products liability. That case merely stated that "plaintiffs have asserted common law causes of action under Missouri law." Id. at 851. In context, that statement does not contradict the fact that the common law cause of action has now been codified.
>
> Perhaps the best explanation for the statutory silence regarding strict liability for providing a defective medical device is found in the state of the common law regarding products liability claims against health care providers in this state prior to the enactment of chapter 538 in 1986. At that time, the only case in which the courts of this state had considered strict liability against a health care provider was that of *Hershley v. Brown*, 655 S.W.2d 671 (Mo.App.1983). There the court of appeals held that products liability was not applicable to a physician who implanted a medical device in a patient. Id. at 675. It found persuasive a Wisconsin case refusing to impose strict liability upon a surgeon for injuries arising from a lung biopsy. *Hoven v. Kelble*, 79 Wis.2d 444, 256 N.W.2d 379 (1977). In addition, the court cited a California case holding strict liability inapplicable to a physician for injuries resulting from a prescribed medication. *Carmichael v. Reitz*, 95 Cal.Rptr. 381, 17 Cal.App.3d 958 (1971). Relying on *Carmichael*, the California courts that same year considered whether products liability was applicable to a hospital in *Silverhart v. Mount Zion Hosp.*, 98 Cal.Rptr. 187, 20 Cal.App.3d 1022 (1971). In that case, the court refused to extend products liability to a hospital for injuries caused by a broken surgical needle.

Against that backdrop, the only additional safeguards to assure against strict products liability claims were the requirements of an affidavit of negligence and to make clear that the codification of strict liability for defective products was inapplicable to health care providers.[6] Thus, the general assembly intended that liability of health care providers be rooted in a culpable state of mind that gives rise to traditional tort liability and not in strict liability relating to the transfer of products under the Restatement (Second) of Torts sec. 402A, as codified in sec. 537.760.

>Footnote 6: Section 538.300 was enacted as part of the same bill as sec. 537.760 to sec. 537.765 in 1987.

The Court is mindful that since adoption of chapter 538, a number of cases have been decided by the court of appeals of this state allowing a plaintiff to bring a strict products liability action against a hospital where the hospital transferred a defective medical device to a patient. In *Bell v. Poplar Bluff Physicians Group*, 879 S.W.2d 618 (Mo.App.1994), the court adopted the reasoning of the dissent in *State ex rel. American Medical Int'l, Inc. v. Sweeney*, 845 S.W.2d 648 (Mo.App.1992) (Maus, J., dissenting). The dissent in *Sweeney* agreed that sec. 538.225, requiring an affidavit of fault attributable to the defendant health care provider, applied to a hospital that sells or transfers a surgical implant to a patient but construed that section to require only an affidavit that the health care provider sold a defective product. *Id*. at 652-53. *Bell*, by its reliance on *Sweeney*, would eliminate the clear legislative requirement of an affidavit that a health care provider "failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances" and that such failure caused injury to the plaintiff. To accept an affidavit of a lower standard of care than negligence or a different cause of injury than the defendant health care provider's fault is to rewrite the statute, not construe it. *Bell* has been followed in *Brandon v. Southeast Missouri Hospital, Inc*., 926 S.W.2d 113 (Mo.App.1996), and *Pinkerton v. Southeast Missouri Hosp. Ass'n, 926 S*.W.2d 137 (Mo.App.1996).

More recently, *Bell* was taken a step further in *Mulligan v. Truman Medical Ctr*., 950 S.W.2d 576 (Mo.App.1997). Like *Bell*, the *Mulligan* court would permit a strict liability case to proceed against a health care provider without the affidavit of fault mandated by sec. 538.225. In addition, the *Mulligan* court construed sec. 538.300 as

intended to retain common law strict products liability against health care providers, even though such liability had been specifically rejected in the single Missouri case in which such claim was raised prior to enactment of sec. 538.300. To the extent *Bell, Brandon, Pinkerton and Mulligan* are inconsistent with the text and history of chapter 538, they are overruled.

> The legislature has spoken with reasonable clarity expressing an intent to eliminate liability of health care providers for strict products liability. All canons of statutory construction are subordinate to the requirement that the Court ascertain and apply the statute in a manner consistent with that legislative intent. *Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995). As the briefs of the parties point out, appealing public policy arguments can be made both for and against imposing strict liability where a health care provider transfers a defective product to a patient. However, when the legislature has spoken on the subject, the courts must defer to its determinations of public policy.

*Budding v. SSM Healthcare System,* 19 S.W.3d 678, 681-682 (Mo.,2000).

The Petition claims that St. Luke's sold the allegedly defective product at issue, and is therefore attempting to state a strict product liability claim against St. Luke's. This claim must be dismissed.

While not entirely clear,[2] Count II alleges that St Luke's was negligent in the sale of the cottonoid in furnishing it to Plaintiff Pamela. Pursuant to Section 537.762, this claim must be dismissed.

Section 537.762 provides that the Court "shall dismiss without prejudice the claim" against the seller defendant if the requirements of subsections two and three

---

[2] The Petition adopts paragrapsh one through thirteen of Count I in Count II and thereafter proceeds to allege that "Defendants were negligent" in a number of different ways, without denoting which defendants were allegedly negligent in which manner. Based on Count I, however, it is apparent that Plaintiffs are alleging St. Luke's was negligent in the sale of the cottonoid.

are met and if no party asserts evidence rendering the seller liable on some basis other than its status as a seller in the stream of commerce. § 537.762.5 RSMo.

Subsections two and three of § 537.762 have been satisfied. St. Luke's alleged liability arises solely from its position as a "seller." There are no facts or circumstances alleged upon which a verdict might be rendered against St. Luke's in this case under a products liability theory, other than as an alleged seller in the stream of commerce, nor have Plaintiffs responded with any such basis for liability.

Plaintiffs have also sued co-defendants Codman & Shurteef, Inc., Johnson & Johnson Professional, Inc. and Johnson & Johnson, who are the alleged manufacturers of the cottonoid in question. If the cottonoid is defective as alleged, Plaintiffs may seek recovery against the manufacturers.

Thus, even if St. Luke's could be found to be a seller, see *supra*, St. Luke's must be dismissed pursuant to § 537.762 RSMo.

Because Count III is a loss of consortium claim based upon the alleged injuries of Plaintiff Pamela Kampelman and the Court has dismissed these claims as they relate to St. Luke's, Plaintiff David Kampelman's claims in Count III must be dismissed as well. *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 112-13 (Mo.App. 2006).

**Conclusion**

Based upon the foregoing analysis, Plaintiffs are unable to state a claim against St. Luke's.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant St. Luke's Episcopal-Presbyterian Hospitals d/b/a St. Luke's Hospital's Motion to Dismiss, [Doc. No. 8] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant St. Luke's Episcopal-Presbyterian Hospitals d/b/a St. Luke's Hospital is dismissed from this action.

Dated this 31st day of July, 2009.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE